UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
DONNELL JACKSON,                                    Case No. 15 CV 4109
                        Plaintiff,                  (CBA) (RLM)

        -against-                                   **SECOND AMENDED
                                                    COMPLAINT**

THE CITY OF NEW YORK, DETECTIVE                     JURY DEMAND
DERRICK BAITY [SHIELD # 964],
DETECTIVE MICHAEL DUFFY [SHIELD
# 4041], P.O. JUAN CARLOS CRUZ [TAX REG.
# 933723], DETECTIVE MATTHEW MCCLUSKY
[SHIELD # 3563], DETECTIVE MAXIMILIA
LANZA [TAX REG. # 932880], CAPTAIN
SHARKEY, LIEUTENANT RHONNY KING
[TAX REG. # 915120], P.O. CLARKE,
DETECTIVE PERCY, DETECTIVE VASATURO,
DETECTIVE LOPEZ, SERGEANT MORRISSEY,
P.O. NORDENSCHILD, P.O. GEORGE AZIZE
[SHIELD # 16004], SERGEANT THOMAS
TURNER, P.O. ANIBAL TORRES [TAX REG.
# 947862], P.O. ANDREW LEIPER, SERGEANT
O'CONNOR and JOHN DOE and JANE DOE
(the names John and Jane Doe being fictitious,
as the true names are presently unknown),
                        Defendants.
-------------------------------------------------------------------X

Plaintiff, DONNELL JACKSON, by his attorney, The Law Offices of UGO UZOH, P.C.,
complaining of the defendants herein, The City of New York, Detective Derrick Baity
[Shield # 964], Detective Michael Duffy [Shield # 4041], P.O. Juan Carlos Cruz [Tax
Reg. # 933723], Detective Matthew McClusky [Shield # 3563], Detective Maximilia
Lanza [Tax Reg. # 932880], Captain Sharkey, Lieutenant Rhonny King [Tax Reg. #
915120], P.O. Clarke, Detective Percy, Detective Vasaturo, Detective Lopez, Sergeant
Morrissey, P.O. Nordenschild, P.O. George Azize [Shield # 16004], Sergeant Thomas
Turner, P.O. Anibal Torres [Tax Reg. # 947862], P.O. Andrew Leiper, Sergeant
O'Connor, John Doe and Jane Doe (collectively, "Defendants"), respectfully alleges as
follows:

## NATURE OF THE ACTION

1.　　　　This is an action at law to redress the deprivation of rights secured to the plaintiff under color of statute, ordinance, regulation, custom, and/or to redress the deprivation of rights, privileges, and immunities secured to the plaintiff by the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States, and by Title 42 U.S.C. § 1983, and arising under the law and statutes of the City and State of New York.

## JURISDICTION

2.　　　　The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 1343, 28 U.S.C. § 1331 and 28 U.S.C. § 1367, and under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

3.　　　　As the deprivation of rights complained of herein occurred within the Eastern District of New York, venue is proper in this district pursuant to 28 U.S.C. § 1391 (b) and (c).

## COMPLIANCE WITH N.Y. GEN. MUN. LAW REQUIREMENTS

4.　　　　Plaintiff timely made and served a notice of claim upon the defendants in compliance with N.Y. Gen. Mun. Law § 50-e.

5.　　　　At least thirty days have elapsed since the service of aforesaid notice of claim and adjustment or payment thereof has been neglected or refused.

6.　　　　This action is commenced within one year and ninety days after the happening of the event(s) upon which the claim(s) is based.

## THE PARTIES

7.　　　　Plaintiff is and was at all times material herein a resident of the United States and the State of New York.

8.　　　　Defendant City of New York ("City") is a municipal corporation duly organized and existing under the laws of the State of New York.

9.　　　　The City of New York Police Department ("NYPD") is an agency of defendant City, and all officers referred to herein were at all times relevant to this complaint employees and agents of defendant City.

10.     Defendant Detective Derrick Baity [Shield # 964] was at all times material herein a detective employed by the NYPD. He is named here in his official and individual capacities.

11.     Defendant Detective Michael Duffy [Shield # 4041] was at all times material herein a detective employed by the NYPD. He is named here in his official and individual capacities.

12.     Defendant P.O. Juan Carlos Cruz [Tax Reg. # 933723] was at all times material herein a police officer employed by the NYPD. He is named here in his official and individual capacities.

13.     Defendant Detective Matthew McClusky [Shield # 3563] was at all times material herein a detective employed by the NYPD. He is named here in his official and individual capacities.

14.     Defendant Detective Maximilia Lanza [Tax Reg. # 932880] was at all times material herein a detective employed by the NYPD. He is named here in his official and individual capacities.

15.     Defendant Captain Sharkey was at all times material herein a captain employed by the NYPD. S/he is named here in his or her official and individual capacities.

16.     Defendant Lieutenant Rhonny King [Tax Reg. # 915120] was at all times material herein a lieutenant employed by the NYPD. S/he is named here in his or her official and individual capacities.

17.     Defendant P.O. Clarke was at all times material herein a police officer employed by the NYPD. S/he is named here in his or her official and individual capacities.

18.     Defendant Detective Percy was at all times material herein a detective employed by the NYPD. S/he is named here in his or her official and individual capacities.

19.     Defendant Detective Vasaturo was at all times material herein a detective employed by the NYPD. S/he is named here in his or her official and individual capacities.

20.     Defendant Detective Lopez was at all times material herein a detective employed by the NYPD. S/he is named here in his or her official and individual capacities.

21.     Defendant Sergeant Morrissey was at all times material herein a sergeant employed by the NYPD. S/he is named here in his or her official and individual capacities.

22.     Defendant P.O. Nordenschild was at all times material herein a police officer employed by the NYPD. S/he is named here in his or her official and individual capacities.

23.     Defendant P.O. George Azize [Shield # 16004] was at all times material herein a police officer employed by the NYPD. He is named here in his official and individual capacities.

24.     Defendant Sergeant Thomas Turner was at all times material herein a sergeant employed by the NYPD. He is named here in his official and individual capacities.

25.     Defendant P.O. Anibal Torres [Tax Reg. # 947862] was at all times material herein a police officer employed by the NYPD. He is named here in his official and individual capacities.

26.     Defendant P.O. Andrew Leiper was at all times material herein a police officer employed by the NYPD. He is named here in his official and individual capacities.

27.     Defendant Sergeant O'Connor was at all times material herein a sergeant employed by the NYPD. He is named here in his official and individual capacities.

28.     Defendants John Doe and Jane Doe were at all times material herein individuals and/or officers employed by the NYPD. They are named here in their official and individual capacities.

29.     Defendants Baity, Duffy, Cruz, McClusky, Lanza, Sharkey, King, Clarke, Percy, Vasaturo, Lopez, Morrissey, Nordenschild, and John Doe and Jane Doe are collectively referred to herein as "Baity defendants".

30.     Defendants Azize, Turner, Torres, Leiper, O'Connor and John Doe and Jane Doe are collectively referred to herein as "Azize defendants".

31.     Baity defendants and Azize defendants are collectively referred to herein as "defendant officers".

32.     At all times material to this Complaint, the defendant officers acted toward plaintiff under color of the statutes, ordinances, customs, and usage of the State and City of New York.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### The November 10, 2012 Incident

33.     On or about November 10, 2012, at approximately 2:00 a.m., Azize defendants, acting in concert, arrested the plaintiff without cause at or near the corner of Pitkin and Christopher Avenues, Brooklyn, New York, and charged plaintiff with PL 265.03(3) 'Criminal possession of a weapon in the second degree' and PL 265.01(1) 'Criminal possession of a weapon in the fourth degree'.

34.     Plaintiff, however, was not in possession of any weapon and did not commit any offense against the laws of New York City and/or State for which any arrest may be lawfully made.

35.     Prior to the November 10, 2012 arrest, plaintiff and his then girlfriend, Baylena, were hanging out with some of their friends at their neighbor's apartment which is located at 1800 Pitkin Avenue Brooklyn, New York.

36.     After a period of time, plaintiff's girlfriend left the 1800 Pitkin Avenue location and went to a nearby store to buy some refreshments.

37.     As soon as plaintiff's girlfriend stepped out of the 1800 Pitkin Avenue location, sound of gunshots were heard around the premises.

38.     Out of concern for the safety of his girlfriend, plaintiff left the location and went to the store to look for his girlfriend.

39.     After finding his girlfriend at the store, and briefly reuniting with her, plaintiff decided to stop by his nearby apartment which at the time was located at 1811 Pitkin Avenue, Brooklyn, New York.

40.     After plaintiff and his girlfriend left the store, plaintiff escorted his girlfriend back to the 1800 Pitkin Avenue location and ran back to his apartment to look for his cigarettes.

41.     Plaintiff's girlfriend held the door to 1800 Pitkin Avenue open for the plaintiff while he ran back to his apartment.

42.     Plaintiff did not find his cigarettes in his apartment.

43.     Plaintiff quickly ran out of his apartment and attempted to run back to 1800 Pitkin Avenue to rejoin his girlfriend and their friends.

44.     As plaintiff was within a few feet of the 1800 Pitkin Avenue location, he was cut off and stopped on his tracks by Azize defendants.

45.     Azize defendants stated that they received a complaint concerning alleged gunshots fired at the location and then questioned the plaintiff as to the reason why he was running.

46.     Plaintiff politely explained to Azize defendants that he was coming from his apartment at 1811 Pitkin Avenue and that he was going to 1800 Pitkin Avenue to rejoin his girlfriend and friends.

47.     Plaintiff further explained that he was running because his girlfriend held the door to 1811 Pitkin Avenue open for him and he didn't want to keep her waiting for too long.

48.     Azize defendants however still proceeded to arrest plaintiff.

49.     Azize defendants tightly handcuffed the plaintiff with his hands placed behind his back.

50.     Azize defendants then subjected plaintiff to an illegal and warrantless search with Azize defendants pushing, shoving, kicking and grabbing plaintiff.

51.     Azize defendants did not recover any contraband from their illegal and warrantless search of plaintiff.

52.     Upon observing the situation, plaintiff's girlfriend and several of his friends and neighbors approached the scene and advised Azize defendants that they

6

were socializing with the plaintiff at 1800 Pitkin Avenue and that plaintiff did not do anything wrong.

53.     Notwithstanding the above, Azize defendants still forcibly pushed plaintiff into their police vehicle.

54.     Eventually, Azize defendants transported plaintiff to NYPD-73rd Precinct.

55.     After detaining plaintiff for a lengthy period of time at the precinct, plaintiff was transported to the Central Booking to await arraignment.

56.     While plaintiff was awaiting arraignment, Azize defendants met with prosecutors employed by the Kings County District Attorney's Office.

57.     During this meeting, Azize defendants falsely stated to the prosecutors, among other things, that they observed the plaintiff running with a black hi-point 9mm pistol loaded with 9 bullets in his hand which they subsequently recovered from the ground where they allegedly observed the plaintiff threw the pistol.

58.     Based on the false testimony of Azize defendants, the prosecutors initiated criminal actions against the plaintiff.

59.     Azize defendants continued the malicious prosecution by offering false testimony to the Kings County Grand Jury.

60.     Bail was set in the amount of $25,000 to secure the plaintiff's release.

61.     Because plaintiff could not make bail, plaintiff was transported to Rikers Island, and was incarcerated at said facility for several days.

62.     On or about November 16, 2012, the Kings County Grand Jury returned a no true bill.

63.     Following the grand jury's vote against the bill of indictment, plaintiff was released from his unlawful incarceration but was still required to return to the criminal court to defend the false charges levied against him.

64.     In or about January 2013, plaintiff appeared at the criminal court as he was directed but was informed that the false charges levied against him had been dismissed.

The January 27, 2014 Incident

65.     On or about January 27, 2014, at approximately 3:00 p.m., Baity defendants, acting in concert, arrested the plaintiff without cause at 1575 East New York Avenue, 1st Floor, Brooklyn, New York, and charged plaintiff with PL 265.03(3) 'Criminal possession of a weapon in the second degree', PL 265.02(1) 'Criminal possession of a weapon in the third degree', PL 265.01-b(1) 'Criminal possession of a firearm', and PL 220.03 'Criminal possession of a controlled substance in the seventh degree'.

66.     Plaintiff, however, was not in possession of any weapon, firearm or controlled substance and did not commit any offense against the laws of New York City and/or State for which any arrest may be lawfully made.

67.     Prior to the January 27, 2014 arrest, plaintiff went over to the aforementioned arrest location to meet with his friend Deshawn Livingston.

68.     Upon information and belief, the location consists of a living room, 3 bedrooms, 2 bathrooms and a kitchen.

69.     Mr. Livingston, who occupied the middle bedroom which is also identified as bedroom #2 ("bedroom #2"), shared the location with several other individuals.

70.     Upon arrival at the location, Mr. Livingston's girlfriend, Ms. Bree, opened the door and let the plaintiff into the premises.

71.     Upon learning that Mr. Livingston was not at home, plaintiff contacted Mr. Livingston.

72.     Mr. Livingston informed the plaintiff that he was on his way home and requested plaintiff to wait for him.

73.     Ms. Bree however stepped out of the premises.

74.     Because of the living arrangement at the premises, and as was the practice of the residents to receive visitors in their respective bedrooms, plaintiff waited for Mr. Livingston in bedroom #2.

75.     Shortly after arriving at the premises, plaintiff heard a knock on the entrance door to the premises.

76.     Believing that Mr. Livingston had returned and was knocking on the door, plaintiff went and opened the door.

77.     Upon opening the door, the plaintiff was met by an individual who the plaintiff now believes to be a confidential informant ("confidential informant").

78.     The confidential informant informed the plaintiff that he had a meeting with Mr. Livingston, and that Mr. Livingston had advised the confidential informant to wait for him.

79.     Plaintiff then let in the confidential informant, and led the confidential informant to bedroom #2 where they both sat and waited for Mr. Livingston.

80.     Shortly thereafter, there was another knock on the entrance door.

81.     Plaintiff went and opened the entrance door.

82.     An individual named Pernell Brown who resided at the premises at the time entered and went into the first bedroom from the entrance door.

83.     Immediately after Mr. Brown entered into the premises, Baity defendants broke down the entrance door and stormed into the premises.

84.     Upon storming into the premises, Baity defendants immediately went into the first bedroom and arrested Mr. Brown.

85.     After handcuffing Mr. Brown, Baity defendants placed him in the living room.

86.     Baity defendants next apprehended and handcuffed the confidential informant who ran and unsuccessfully attempted to hide himself in a closet that is located in bedroom #2 but was unable to open the closet as it appeared to be locked.

87.     After handcuffing the confidential informant, Baity defendants removed him from bedroom #2 and placed him in the living room.

88.     Finally, after placing the confidential informant in the living room, Baity defendants tightly handcuffed the plaintiff with his hands placed behind his back.

89.     After handcuffing plaintiff, Baity defendants proceeded to perform a search of the plaintiff.

9

90.     Baity defendants did not find any contraband on plaintiff.

91.     At all times material to this Complaint, no contraband was located in plain view and no contraband was located in any area where it could be argued that the plaintiff saw such contraband, had regular access to such area and/or exercised dominion and control over the area.

92.     Eventually, Baity defendants forcibly removed plaintiff from bedroom #2.

93.     Following the arrest, Baity defendants promptly removed plaintiff and the other 2 individuals -- Mr. Brown and the confidential informant -- from the premises.

94.     Baity defendants placed plaintiff in a separate police van and transported him to NYPD-73rd Precinct.

95.     Upon information and belief, Baity defendants subsequently performed a search of the aforementioned premises after plaintiff had been removed from the location.

96.     After detaining plaintiff for a lengthy period of time at the precinct, plaintiff was transported to the Central Booking to await arraignment.

97.     While plaintiff was awaiting arraignment, Baity defendants met with prosecutors employed by the New York County District Attorney's Office.

98.     During this meeting, Baity defendants falsely stated to the prosecutors, among other things, that plaintiff was in possession of multiple weapons, a firearm and controlled substance.

99.     Based on the false testimony of Baity defendants, a prosecution was commenced against plaintiff.

100.    Baity defendants continued the malicious prosecution by offering false testimony to the New York County Grand Jury, causing the New York County Grand Jury to return a true bill of indictment as to PL 265.03(3) 'Criminal possession of a weapon in the second degree', PL 265.02(1) 'Criminal possession of a weapon in the third degree', and PL 265.01-b(1) 'Criminal possession of a firearm' only.

101.    The New York County Grand Jury returned a no true bill of indictment as to all other charges including PL 220.03 'Criminal possession of a controlled substance in the seventh degree'.

102.    Bail was set in the amount of $10,000 to secure the plaintiff's release.

103.    Because plaintiff could not make bail, plaintiff was transported to Rikers Island, and was incarcerated at said facility for several months.

104.    After further investigations, the prosecutors determined that defendant officers "would not be able to testify with a sufficient degree of particularity as to the recovery" of any narcotics and that there was no evidence connecting the plaintiff to any other weapon or contraband allegedly recovered from the premises.

105.    Accordingly, the prosecutors moved to dismiss the indictment and charges.

106.    On or about April 15, 2014, the false charges levied against plaintiff were summarily dismissed.

107.    Even though the charges were dismissed, plaintiff still remained incarcerated because of parole hold stemming from the January 27, 2014 arrest and charges.

108.    On or about May 16, 2014, following the revocation of the parole hold, the plaintiff was released from his unlawful incarceration.

109.    Each and every officer who responded to and/or was present at the location of the arrest and/or at the precinct, station house or facility knew and was fully aware that the plaintiff did not commit any crime or offense, and had a realistic opportunity to intervene to prevent the harm detailed above from occurring. Further, each and every officer and/or individual who responded to, had any involvement and/or was present at the location of the assault knew and was fully aware of the assault and had a realistic opportunity to intervene to prevent the serious harm detailed above from occurring.

110.    Nonetheless, defendants did absolutely nothing to discourage and prevent the harm detailed above from occurring and failed to protect and ensure the safety of the plaintiff.

111.     As a result of the aforesaid actions by defendants, plaintiff suffered and continues to suffer emotional distress, fear, embarrassment, humiliation, shock, discomfort, loss of liberty, loss of rights to familial association, wages and financial losses, pain and damage, and damage to reputation.

FIRST CAUSE OF ACTION: FALSE ARREST - against defendant officers

112.     By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 111 of this complaint as though fully set forth herein.

113.     The conduct of defendant officers, as described herein, amounted to false arrest.

114.     Such conduct violated plaintiff's rights under 42 U.S.C. § 1983 and the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

115.     Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

SECOND CAUSE OF ACTION: FAILURE TO INTERVENE - against defendant officers

116.     By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 115 of this complaint as though fully set forth herein.

117.     That each and every officer and/or individual who responded to, had any involvement and/or was present at the location of the arrest, assault and/or incident described herein knew and was fully aware that plaintiff did not commit any crime or offense, and had a realistic opportunity to intervene to prevent the harm detailed above from occurring.

118.     Nonetheless, defendant officers did absolutely nothing to discourage and prevent the harm detailed above from occurring and failed to intervene.

119.     Such conduct described herein violated plaintiff's rights under 42 U.S.C. § 1983 and the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

12

120.    Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

THIRD CAUSE OF ACTION: UNREASONABLE DETENTION - against defendants

121.    By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 120 of this complaint as though fully set forth herein.

122.    Defendant officers denied plaintiff his due process right to be free from continued detention after it was or should have been known that plaintiff was entitled to release.

123.    The conduct of defendant officers, as described herein, amounted to unreasonable detention.

124.    Such conduct described herein violated plaintiff's rights under 42 U.S.C. § 1983 and the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

125.    Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

FOURTH CAUSE OF ACTION: FABRICATION OF EVIDENCE AND DENIAL OF RIGHT TO A FAIR TRIAL - against defendant officers

126.    By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 125 of this complaint as though fully set forth herein.

127.    Defendant officers manufactured evidence of criminality against the plaintiff which the prosecutors relied upon to initiate criminal actions against the plaintiff.

128.    The conduct of defendant officers, as described herein, amounted to fabrication of evidence and denial of right to a fair trial.

129.    Such conduct described herein violated plaintiff's rights under 42 U.S.C. § 1983 and the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

130.    Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

FIFTH CAUSE OF ACTION: UNLAWFUL STOP AND FRISK - against defendant officers

131.    By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 130 of this complaint as though fully set forth herein.

132.    The conduct of defendant officers, as described herein, amounted to unlawful stop and frisk.

133.    Such conduct described herein violated plaintiff's rights under 42 U.S.C. § 1983 and the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

134.    Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

SIXTH CAUSE OF ACTION: UNREASONABLE SEARCH & SEIZURE - against defendant officers

135.    By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 134 of this complaint as though fully set forth herein.

136.    Defendant officers subjected plaintiff to unreasonable search & seizure.

137.    Such conduct described herein violated plaintiff's rights under 42 U.S.C. § 1983 and the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

138.    Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

SEVENTH CAUSE OF ACTION: MALICIOUS PROSECUTION - against defendant officers

139.    By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 138 of this complaint as though fully set forth herein.

14

140.   The conduct of defendant officers, as described herein, amounted to malicious prosecution.

141.   Such conduct described herein violated plaintiff's rights under 42 U.S.C. § 1983 and the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

142.   Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

EIGHTH CAUSE OF ACTION: CONSPIRACY - against defendant officers

143.   By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 142 of this complaint as though fully set forth herein.

144.   In an effort to find fault to use against the plaintiff who is black, defendant officers met with themselves and with several other individuals (including but not limited to the confidential informant) on numerous occasions (including but not limited to the January 27, 2014 date of arrest) and agreed to deprive plaintiff of his constitutional rights secured by 42 U.S.C. § 1983 and the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

145.   Such conduct described herein violated plaintiff's rights under 42 U.S.C. § 1983 and the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

146.   Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of defendant officers, individually and severally.

NINTH CAUSE OF ACTION: FAILURE TO TRAIN/SUPERVISE/DISCIPLINE AND MUNICIPAL POLICY - against defendant City

147.   By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 146 of this complaint as though fully set forth herein.

148.    Defendant City of New York, acting through NYPD, had actual and/or de facto policies, practices, customs and/or usages of failing to properly train, supervise or discipline its police officers concerning correct practices in conducting investigations, the use of force, interviewing of witnesses and informants, assessment of the credibility of witnesses and informants, reasonable search of individuals and/or their properties, the seizure, voucher and/or release of seized properties, obligation not to promote or condone perjury and/or assist in the prosecution of innocent persons and obligation to effect an arrest only when probable cause exists for such arrest.

149.    Additionally, defendant City of New York, acting through Cyrus R. Vance, Jr. and the Office of the District Attorney of the New York County and through the Office of the District Attorney of the County of Kings, had actual and/or de facto policies, practices, customs and/or usages of failing to properly train, supervise, and discipline its Assistant District Attorneys and employees concerning correct practices in conducting investigations, interviewing witnesses and informants, assessing the credibility of witnesses and informants, the initiation and/or prosecution of criminal actions, obligation not to promote or condone perjury and/or assist in the prosecution of innocent persons and the duty and/or obligation of candor toward the court.

150.    Defendant City of New York, acting through aforesaid NYPD and District Attorney(s), had actual and/or de facto policies, practices, customs and/or usages of wrongfully arresting, illegally stopping, frisking, searching, seizing, abusing, humiliating, degrading and/or maliciously prosecuting individuals who are members of racial/ethnic minority groups such as plaintiff, who is black, on the pretext that they were involved in narcotics, drugs, guns and/or other illicit activities.

151.    Further, the existence of the aforesaid unconstitutional policies, practices, customs and/or usages may be inferred from repeated occurrences of similar wrongful conduct.

16

152.        For example, in *Jones v. City of New York*, 603 Fed. Appx. 13 (2d Cir. 2015), Police Officer David Rodriguez arrested the plaintiff in that matter, Javier Jones, merely because he was allegedly informed that Mr. Jones was in the company of another individual named Frantz Machon who allegedly did display a weapon.

153.        Officer Rodriguez was questioned at his deposition as to whether it is NYPD's policy to charge all members of a group with criminal possession of a weapon when only one group member is alleged to have possessed a firearm.

154.        Officer Rodriguez, as the Second Circuit observed, testified that although NYPD "does not have an official policy of charging all members of a group with criminal possession of a weapon when only one group member is alleged to have possessed a firearm, [] 'That is what we do.'" *Jones*, 603 Fed. Appx. at 15.

155.        Officer Rodriguez did further elaborate that "It is like an accomplice to the person with the firearm[]" and that "the normal procedure is when you have a situation like this, everyone gets charged with the firearm because we are going off on what the victim said . . . if the victim said that [Machon] had a firearm, that is going to be the charge for everyone."

156.        As the plaintiff in Jones successfully argued before the Second Circuit, Officer Rodriguez's testimony shows that he "is unaware that he does not have probable cause to arrest a mere bystander[]" which confirms the fact that "he has not been trained on this issue by the City [and NYPD]."

157.        Here, as was true in Jones, the City and NYPD has failed to train defendant officers and has failed to instill in them the fact that they lack probable cause to arrest an individual such as the plaintiff who was merely visiting with his friend and did not have any knowledge of, nor exercised dominion and control over, any purported contraband allegedly recovered from the premises.

158.        Importantly, as noted above, the plaintiff was never in possession of any weapon, firearm or controlled substance.

17

159.    In addition to the above, NYPD Police Officer Michael Carsey was recently convicted of felonies for lying under oath and falsifying information while applying for a search warrant.

160.    Police Officer Carsey's supervisor, Sergeant William Eiseman, had earlier admitted to fabricating facts to justify searching vehicles and homes for cocaine, marijuana and guns, filing false information to obtain search warrants and performing illegal searches of vehicles and homes. That Sergeant Eiseman admitted to perjury and fabricating evidence against innocent persons that he falsely arrested and charged with possession of narcotics and/or illegal drugs, and also admitted to training numerous young police officers to commit similar crimes and/or offenses.

161.    In addition, in or about October 2011, Detective Stephen Anderson testified against Detective Jason Arbeeny, a veteran of the NYPD. That Detective Anderson testified that, among other things, it is a common practice within the NYPD to plant narcotics and/or illegal drugs -- commonly known within the NYPD as "flaking" -- on innocent persons in order to meet arrest quotas. Detective Anderson referred to the practice of planting narcotics and/or illegal drugs on innocent persons as "attaching bodies" to the narcotics and/or illegal drugs. According to Detective Anderson, this practice "was something I was seeing a lot of, whether it was from supervisors or undercovers and even investigators."

162.    Regarding the issue of arrest quotas, Detective Anderson confirmed that the NYPD requires officers to fill quotas, and testified that even as a detective "you still have a number [of arrests] to reach while you are in the narcotics division."

163.    Recently, a jury determined that officers of the NYPD are permitted, as a policy and/or practice, to fill their arrest quotas by making unlawful arrests. See Bryant v. City of New York, Index No. 22011/07 (Sup. Ct. County of Kings Feb. 18, 2011).

164.    Prior to his testimony, Detective Anderson and his partner provided false testimony in court claiming that they purchased cocaine from certain

18

individuals who as surveillance video later confirmed did not have any sort of contact or communication with Detective Anderson and his partner during the time period that Detective Anderson and his partner claimed to have purchased the controlled substances and/or illegal drugs.

165.   Detective Arbeeny was subsequently convicted of planting controlled substances and/or illegal drugs on a woman and her boyfriend, and was convicted of the charges against him including official misconduct, offering a false instrument for filing and falsifying business records.

166.   Recently, the New York Supreme Court, County of Kings, Criminal Term, Gustin L. Reichbach, J., determined that the NYPD's drug unit has a system of flawed procedures that caused Detective Arbeeny's unlawful actions. Judge Reichbach further determined that the NYPD's drug unit has a widespread culture of corruption and has adopted a "cowboy culture" and practice which he described as "[a]nything goes in the never-ending war on drugs." That Judge Reichbach expressed shock at what he described as "the seeming pervasive scope of misconduct [and even worse] . . . the seeming casualness by which such conduct is employed."

167.   Further, in or about 2008, the New York Supreme Court, County of Kings, Criminal Term, Albert Tomei, J., determined at a Mapp hearing in *People v. Simms*, Indictment No. 11263/07, which was held on or about September 9, 2008, that the police officers involved in the arrest in that matter are "not credible" and that the police officers' "testimony is so obviously fabricated . . . to avoid any Constitutional objections the defendant may have . . . and that [any] property taken . . . is to be suppressed because it was the product of an unlawful arrest and search and seizure."

168.   In addition to the instances of police misconduct described above, several officers of the NYPD -- including but not limited to Detective Christopher Perino, Police Officer Michael Daragjati, Police Officer Henry Tavarez, Police Officer William Masso, Detective Oscar Sandino, Detective Sean Johnstone, Sergeant Michael Arenella, Sergeant Jerry Bowens, Police Officer Michael Pena, Police Officer Nicholas Mina, Detective Kevin

19

Spellman and Police Officer Admir Kacamakovic -- have recently been convicted of various similar crimes as those described herein including but not limited to falsifying police reports, perjury, corruption, robbery, gun running, drug dealing, prostitution, theft and assault. Former NYPD Commissioner Bernard Kerik was also recently convicted of corruption and similar crimes as those described herein.

169. In addition to the named individual defendants, several officers of the NYPD assigned to the NYPD-73rd Precinct -- as the named individual defendants -- routinely make unlawful arrests charging innocent persons with various crimes and/or offenses.

170. Most of the arrests and charges made by officers assigned to the NYPD-73rd Precinct are usually voided and/or dismissed by prosecutors for lack of evidence.

171. Defendant City of New York has settled numerous lawsuits brought in this district against several officers assigned to the NYPD-73rd Precinct concerning similar arrests and charges as those described herein. *See, e.g., Annette Young v. City of New York* (14 CV 55); *Diane Dawson v. City of New York* (13 CV 180); *Ramel King v. City of New York* (12 CV 4322); *Tyquan Myrick v. City of New York* (12 CV 2411); *Robert Stephens v. City of New York* (12 CV 1825); *Ramel King v. City of New York* (12 CV 1824); *Paul Lewis v. City of New York* (12 CV 1323); *Jermaine Tolbert v. City of New York* (12 CV 537); *Anthony Holley v. City of New York* (12 CV 259); *Jermaine Tolbert v. City of New York* (11 CV 4871); *Geneeza Walls v. City of New York* (10 CV 5769).

172. Defendant City of New York maintained the above described policies, practices, customs or usages knowing fully well that the policies, practices, customs or usages lead to improper conduct by its police officers and employees. In failing to take any corrective actions, defendant City of New York acted with deliberate indifference, and its failure was a direct and proximate cause of plaintiff's injuries as described herein.

173.     The actions of defendants, acting under color of State law, deprived plaintiff of his due process rights, and rights, remedies, privileges, and immunities under the laws and Constitution of the United States, treatise, ordinances, customary international law and norms, custom and usage of a right; in particular, the right to be secure in his person and property, to be free from abuse of process, the excessive use of force and the right to due process.

174.     By these actions, defendants have deprived plaintiff of rights secured by treatise, ordinances, customary international law and norms, custom and usage of a right, and the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983.

## TENTH CAUSE OF ACTION: TORTS (MALICIOUS PROSECUTION) - against defendants

175.     By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 174 of this complaint as though fully set forth herein.

176.     Based on the false testimony of defendants, the prosecutors initiated criminal actions against the plaintiff.

177.     Plaintiff was required to, and did, appear in court on multiple occasions to defend himself from the false charges levied against him with malice by defendants.

178.     Eventually, the criminal proceeding(s) terminated in plaintiff's favor.

179.     Because of the conduct of the defendants, plaintiff was maliciously prosecuted for a lengthy period of time.

180.     Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

## ELEVENTH CAUSE OF ACTION: TORTS (NEGLIGENCE AND/OR BREACH OF SPECIAL DUTY OR RELATIONSHIP) - against defendants

181.     By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 180 of this complaint as though fully set forth herein.

182.      Defendants failed to properly care, supervise and protect the plaintiff, failed to ensure the plaintiff's health and safety, and were careless and negligent in their treatment of the plaintiff.

183.      The conduct of the defendants, as described herein, amounted to negligence and breach of special duty or relationship.

184.      Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

TWELFTH CAUSE OF ACTION: TORTS (NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS) - against defendants

185.      By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 184 of this complaint as though fully set forth herein.

186.      The defendants engaged in extreme and outrageous conduct, intentionally and recklessly causing severe emotional distress to plaintiff.

187.      Plaintiff's emotional distress has damaged his personal and professional life because of the severe mental pain and anguish which were inflicted through deliberate and malicious actions including the arrest, assault, detention and imprisonment by defendants.

188.      Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

WHEREFORE, plaintiff respectfully prays judgment as follows:

a.      For compensatory damages against all defendants in an amount to be proven at trial;

b.      For exemplary and punitive damages against all defendants in an amount to be proven at trial;

c.      For costs of suit herein, including plaintiff's reasonable attorney's fees; and;

d.      For such other and further relief as the court deems proper.

DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 (b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury.

Dated: Brooklyn, New York
      October 28, 2016

UGO UZOH, P.C.

/s/

By:   Ugochukwu Uzoh (UU-9076)
      Attorney for the Plaintiff
      304 Livingston Street, Suite 2R
      Brooklyn, NY 11217
      Tel. No: (718) 874-6045
      Fax No: (718) 576-2685
      Email: u.ugochukwu@yahoo.com