1

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - X

DONNELL JACKSON,             :
                                        15-CV-4109(CBA)
        Plaintiff,           :

    -against-                :     United States Courthouse
                                   Brooklyn, New York
THE CITY OF NEW YORK,        :
et al.,
                                   February 14, 2017
        Defendants.          :     3:00 o'clock p.m.

- - - - - - - - - - - - - - X


              TRANSCRIPT OF ORAL ARGUMENT
         BEFORE THE HONORABLE CAROL BAGLEY AMON
            UNITED STATES SENIOR DISTRICT JUDGE.


APPEARANCES:

For the Plaintiff:           UGO UZOH, P.C.
                             304 Livingston Street, Suite 2R
                             Brooklyn, NY 11217

                             BY: UGOCHUKWU UZOH, ESQ.


For the Defendants:          NEW YORK CITY LAW DEPARTMENT
                             100 Church St
                             New York, NY 10007

                             BY: MATTHEW E. STEIN, ESQ.


Court Reporter:              Charleane M. Heading
                             225 Cadman Plaza East
                             Brooklyn, New York
                             (718) 613-2643

Proceedings recorded by mechanical stenography, transcript
produced by computer-aided transcription.
```

1  THE LAW CLERK: Jackson v. City of New York,
2  15-CV-4109, on for oral argument.
3  THE COURT: All right. Will the parties state their
4  appearances, please.
5  MR. UZOH: Good afternoon, Your Honor. Ugo Uzoh for
6  Mr. Jackson.
7  MR. STEIN: Good afternoon, Judge. Matthew Stein
8  for the defendants.
9  THE COURT: All right. Mr. Stein, you want to make
10 a motion to dismiss the proposed second amended complaint?
11 MR. STEIN: The motion itself is to dismiss the
12 amended complaint. Plaintiff has filed a cross-motion to file
13 a proposed second amended complaint.
14 THE COURT: All right. Was your original motion to
15 deny the entirety of the first amended complaint?
16 MR. STEIN: No. It was to deny all claims except
17 for -- so just a brief background, Your Honor, the plaintiff
18 is bringing claims for two separate incidences, two arrests.
19 THE COURT: Right.
20 MR. STEIN: The motion to dismiss is to dismiss all
21 claims except for a false arrest claim and malicious
22 prosecution claim relating to the first arrest of November 10,
23 2012.
24 THE COURT: Okay. So, files an amended complaint,
25 second amended complaint.

1    On the basis of the first amended complaint, what is
2 your argument that on the face of the complaint, it shows that
3 there was probable cause?  This is the January incident,
4 right, the January 27th?
5    MR. STEIN:  That's correct, Your Honor.
6    First, on the face of the complaint and also,
7 incorporating the documents attached to our motion,
8 specifically, the fact that crack cocaine was found in the
9 room that the plaintiff admitted to being in his complaint as
10 well as the existence --
11    THE COURT:  Where was it found in the room?
12    MR. STEIN:  The crack cocaine was found on the floor
13 and on the table, but more specifically, and I know the Court
14 has read the papers, the two guns that were found in the
15 closet gave rise to indisputable probable cause to arrest the
16 plaintiff.  He claims he was in the bedroom of the apartment.
17    THE COURT:  That's enough probable cause to arrest,
18 that he is in a room with guns in a closet?
19    MR. STEIN:  Absolutely. Absolutely.  In this case,
20 he admittedly wasn't a resident of the apartment but he was
21 let in.  He wasn't in a common area.  He was in his friend's
22 bedroom, so in the room where drugs were found, inside a
23 closet that was unlocked.
24    THE COURT:  The drugs were found or guns were found
25 in the closet?

4

1           MR. STEIN: Two guns were found in the closet.
2           THE COURT: Where were the drugs?
3           MR. STEIN: The drugs were found on a table and on
4 the floor.
5           THE COURT: Well, in terms of probable cause, forget
6 the guns. They would have had probable cause to arrest him
7 for the drugs.
8           MR. STEIN: Absolutely, independently,
9 independently, yes.
10          THE COURT: But does it allege in the complaint the
11 drugs were found in the room?
12          MR. STEIN: The only thing that the complaint
13 alleges was that no contraband was found on the plaintiff.
14          THE COURT: And what is the basis of the statement
15 that contraband was found in plain view in the room?
16          MR. STEIN: Those would be the documents attached to
17 the motion, specifically the criminal court complaint which I
18 believe is attached as Exhibit B. It says that crack cocaine
19 was found in the --
20          THE COURT: That's not to the complaint. It's to a
21 motion?
22          MR. STEIN: Yes, to defendant's motion, Your Honor.
23          THE COURT: How can you rely on that?
24          MR. STEIN: The Court is permitted to take notice of
25 documents that were relied upon or the effects of which were

5

relied upon to draft the complaint. In this case, the criminal court complaint stems from the January 27, 2014 arrest.

THE COURT: How do you know they were used to draft the complaint?

MR. STEIN: Well, we know they were in the plaintiff's possession because that's what he was, those are the crimes that he was accused of committing on January 27, 2014.

THE COURT: Do you rely on anything else?

MR. STEIN: Your Honor, the case law says he relies on -- he's disputing the arrest. He's disputing the fact that the probable cause existed to arrest him for the possession of guns and the possession of contraband. He is relying on the affect of the document stating that he did, in fact, possess that contraband, the narcotics and the firearms. The Court is permitted to rely on the effect or take judicial notice of those documents because by disputing the fact that there was probable cause to arrest him, he was relying on the effect of the documents, specifically, that he did commit those crimes or at least there was probable cause for him to have committed those crimes.

THE COURT: Well, how is he -- again, how is he relying on the documents?

MR. STEIN: Well, his complaint alleges that there

was no probable arrest to arrest him, that he was falsely arrested and maliciously prosecuted. So, he was relying on the effect of the documents which accuse him of possessing narcotics and firearms. He's directly disputing the contents of those documents.

THE COURT: Well, if he is disputing the contents of the documents, then we've got a ball game.

MR. STEIN: He can't dispute the contents of the documents.

THE COURT: Why?

MR. STEIN: Because what he alleges is that he goes to the apartment, his friend who he's going to visit isn't there, he is then taken by, I believe, his friend's girlfriend into the bedroom, into his friend's bedroom. The friend's girlfriend then leaves the apartment.

Now, at some point, someone else, another man comes in the apartment who, and it's in the amended complaint, the plaintiff says he later learned is a confidential informant. Right? A few minutes later, the officers come in -- and again it's in plaintiff's amended complaint -- they immediately take the plaintiff out of the room and they arrest him.

Now, after a search of the apartment or of the room which, because the plaintiff was immediately removed from the room, he cannot dispute drugs were found in the bedroom and two guns were found in the closet of the bedroom that the

1  plaintiff was in.
2          Now, there is -- it's not possible for the plaintiff
3  to be able to dispute the existence of those guns in the
4  closet if he is immediately removed from the room.  The
5  officers possessed a valid search warrant.  They had probable
6  cause to search the room so there is no dispute as to the --
7          THE COURT:  Well, the search warrant isn't referred
8  to in the complaint.  How do I take notice of the search
9  warrant?
10         MR. STEIN:  Well, the search warrant -- again, it's
11 the effect of the document, Your Honor.  His original
12 complaint or his amended complaint --
13         THE COURT:  What do you mean, "the effect of the
14 document"?
15         MR. STEIN:  His amended complaint states that there
16 was an illegal search.  The search warrant can be used to show
17 that there was a valid search warrant to search that
18 apartment.
19         THE COURT:  We are not talking about summary
20 judgment.  We are talking about dismissal.
21         MR. STEIN:  If I may, Your Honor.
22         THE COURT:  What authority do you have to say that
23 the search warrant is something referred to in the complaint
24 and relied upon by the complaint such that I consider it?
25 Where do you get that from?

1    MR. STEIN: It's certainly in the case law that I
2 cited, Your Honor, but if you give me a second, I can point to
3 the case directly.
4    Well, the cases that are cited, Your Honor, said
5 that the Court can rely on documents the plaintiffs either
6 possessed or knew about at the time of the arrest. Now, in
7 the amended complaint, the plaintiff is claiming that it was
8 an illegal search.
9    I mean, to be honest, Your Honor, the plaintiff has
10 withdrawn that claim because I'm sure as he knows, he doesn't
11 have standing to contest the search since it wasn't his
12 apartment. So the -- I mean, in this case, Your Honor, the
13 validity --
14    THE COURT: He would have standing if he was in the
15 room.
16    MR. STEIN: Not for the -- not for whether or not
17 the officers can search the apartment because it wasn't his
18 apartment.
19    THE COURT: He's a guest in the apartment, right?
20    MR. STEIN: That's correct.
21    THE COURT: So, why doesn't he have standing if
22 somebody comes in to search the room he's in? Why doesn't he
23 have standing?
24    MR. STEIN: Because it's not his apartment, he
25 doesn't have an expectation of privacy in the room he's in if

1   the officers have a search warrant for somebody else's
2   apartment and he withdrew his claim for an illegal search.
3           The issue that can't be disputed and why the motion
4   should be granted, Your Honor, is that the plaintiff cannot
5   dispute the fact that these guns were recovered from the
6   closet of the room that he was in.
7           THE COURT:  So, it doesn't make any difference to
8   you whether the doors were opened or closed?
9           MR. STEIN:  Well, whether the --
10          THE COURT:  In other words, there is a dispute in
11  here --
12          MR. STEIN:  Yes.
13          THE COURT:  -- as to whether the doors were opened
14  or -- the door to the closet was opened or closed.
15          MR. STEIN:  Shouldn't be a dispute, Your Honor.
16          THE COURT:  Well, I understand your position that he
17  can't write one complaint, then it turns out that's a problem,
18  and then switched the facts.
19          MR. STEIN:  Yes.
20          THE COURT:  Considering the first complaint which
21  was that the person ran and opened the door and went in,
22  right?
23          MR. STEIN:  Yes.
24          THE COURT:  Was it established that the door was
25  wide open at the time he was in the room or just that this

1  person ran in according to what was established?

2         MR. STEIN:  Whether the door was opened or unlocked,
3  it really doesn't matter.  The undisputed fact is that the
4  plaintiff was in a bedroom where guns were found in an
5  unlocked or opened closet in the bedroom.

6         THE COURT:  Assuming it was locked.

7         MR. STEIN:  Even if it were locked, I believe there
8  was probable cause to arrest him.  He is in the room
9  surrounded with two firearms in the bedroom.  Now, whether or
10 not he actually had knowledge of the guns, that is a question
11 for a criminal court.  We are talking about probable cause
12 here.

13        There was -- again, there was a search warrant.  The
14 officers came in expecting to find contraband and they find
15 the plaintiff sitting in the room, in a bedroom in an
16 apartment and two guns were found in the closet, guns that he
17 could not dispute the existence of.  Clearly, that creates
18 probable cause or at the very least, it's arguable probable
19 cause which would grant the officers qualified immunity.

20        If I may, Your Honor, I don't know if I reiterated
21 this, but it's not up to the officers to decide right then and
22 there whether the plaintiff is innocent or guilty.  They work
23 with the information that they have which is that there were
24 two guns in the closet and the plaintiff was in the same room
25 that the guns were in.

1  THE COURT: All right. Counsel, it is undisputed,
2 you are not disputing the fact that there were guns in the
3 closet, correct?
4  MR. UZOH: Your Honor, we don't know that. We --
5 for now the motion to dismiss, we obviously don't have a basis
6 of disputing that, but our claim really is the officers came
7 in and immediately handcuffed the plaintiff, removed him from
8 the premises and transported him to the precinct before they
9 even searched the premises and at the time the plaintiff was
10 there, nothing was in plain view. That is in the original
11 complaint. That's in the proposed amended complaint.
12  All the claims, all the assertions counsel is
13 making, there's nothing behind it. Counsel is basically
14 asking the Court to consider documents prepared by defendants
15 and on the basis of that, that the Court should consider those
16 documents as the truth of the matter which is not permitted on
17 the motion to dismiss. This is a motion to dismiss. Even if
18 the Court were to take judicial notice, which, in this case,
19 the Court is not supposed to, even if the Court decides to
20 take judicial notice of those documents, the Court can only
21 take notice of information that are not in dispute.
22  Here, whether officers recover, which is their
23 claim, the basis of their motion to dismiss is that contraband
24 were found in plain view and we dispute that. Everything that
25 counsel has been saying is disputed by the plaintiff. So,

12

1 even if the Court were to take judicial notice of the
2 documents counsel has been claiming that the Court should
3 consider, not even judicial notice, but take the
4 allegations --
5     THE COURT: The facts in them.
6     MR. UZOH: Yes. And that's not our motion to
7 dismiss.
8     THE COURT: I can take notice of the fact that
9 that's the document, but I can't take notice of the fact that
10 what's in the document is true.
11     MR. UZOH: Right. So, there is no basis for the
12 motion to dismiss, even the present complaint.
13     Counsel, there's nothing in his papers and there's
14 been nothing in his argument that the Court should dismiss any
15 of the claims and if I may go back, the illegal search and
16 seizure is still in the complaint. The plaintiff did not
17 withdraw -- plaintiff did withdraw unlawful entry claim
18 because he admittedly was there a few minutes before the
19 officers came in, but the illegal search and seizure claim is
20 still there. He has standing to bring that claim. All the,
21 every -- all the essentials, all the claim --
22     THE COURT: But they had a search warrant. Are you
23 disputing that they had a search warrant?
24     MR. UZOH: We don't have a basis for that. They did
25 produce a search warrant. We have not taken discovery to

1   actually figure out whether there was, whether the kind of
2   information that they relied upon to obtain the search warrant
3   and, by the way, that search warrant was actually directed to
4   another individual.  Plaintiff was not the subject of the
5   search warrant.
6            THE COURT:  Search warrants are generally directed
7   to places, not to individuals.
8            MR. UZOH:  That is correct, Your Honor, but in this
9   case, plaintiff was actually visiting.
10           THE COURT:  I'm sorry, what?
11           MR. UZOH:  In this case --
12           THE COURT:  Visiting?
13           MR. UZOH:  He was a visitor.  He was there barely a
14  few minutes before these individuals came in.  He did not
15  reside -- he was not a resident of the premises at the time at
16  least and we, like I said, we don't have the information yet
17  as to the probable cause for the police applying for and
18  obtaining the search warrant.
19           So, at this point, I don't have basis for disputing
20  it.  It's just that it has been produced, but this is a motion
21  to dismiss.  We haven't had the opportunity to conduct
22  discovery.
23           THE COURT:  You know, I don't know on the face of
24  the complaint.  He says here at paragraph 91, no contraband
25  was located in plain view and no contraband was located in any

1  area where it can be argued plaintiff saw contraband, had
2  regular access to the area, dominion or control.
3          MR. STEIN:  If I may, Your Honor?
4          THE COURT:  Yes.
5          MR. STEIN:  Well, in <u>Bell Atlantic v. Twombly</u>, a
6  court "is not bound to accept as true a legal conclusion
7  couched as a factual allegation."
8          THE COURT:  Why is that a legal conclusion?
9          MR. STEIN:  Located in plain view.
10         THE COURT:  It says, no contraband was located in --
11         MR. STEIN:  -- in plain view.
12         What the sentence is -- first of all, just to
13 clarify, Your Honor, there is nothing about contraband in
14 plain view in plaintiff's amended complaint.  What is in
15 paragraph 91, what he's referring to, is his proposed second
16 amended complaint where he contradicts the fact that the
17 closet door was open.
18         THE COURT:  Forget the closet door for a minute.
19 This doesn't say anything about the closet door.
20         MR. STEIN:  This says --
21         THE COURT:  If he adds something to a complaint,
22 that's what one does to an amended complaint.  You add factual
23 allegations.  You can't undo factual allegations from an
24 earlier complaint and I agree with you that I can't take into
25 consideration the claim that now the door was locked, but --

15

1         MR. STEIN: Well, then independently, Your Honor --

2         THE COURT: -- but there was no contraband in plain

3 view. I take it that means drugs.

4         MR. UZOH: Not only drugs, Your Honor. The guns

5 were not in plain view, but if I may go back to the closet.

6         The allegation -- counsel is making this claim. In

7 the amended complaint, if I may go back, what my client told

8 me was that that closet was actually locked. The individual

9 attempted to run into that closet, but was able to open --

10         THE COURT: That's not what you said.

11         MR. UZOH: No, no, the complaint was not clear. It

12 was not clearly drafted.

13         THE COURT: Let's go back. Where is the language.

14 Point it out to me. Are we talking about the first amended

15 complaint?

16         MR. UZOH: The amended, yes.

17         THE COURT: Which paragraph is that?

18         MR. UZOH: The first amended complaint, what it

19 states --

20         THE COURT: Which paragraph?

21         MR. STEIN: 78 or 88, Your Honor. I believe it is

22 78.

23         MR. UZOH: That was 77. Paragraph 77.

24         It says that the -- who ran and pretended to hide

25 himself in the closet.

1    THE COURT:  How do you hide yourself in a closet
2 unless the door is open?
3    MR. UZOH:  I'm pretending.
4    THE COURT:  So what did he lean up against a locked
5 door and pretend to hide?
6    MR. UZOH:  No.  What I was trying to say it was my
7 mistake and the case law is very clear that it, there is
8 nothing in the complaint that says the door was open.
9 There's -- I mean one can read the language.  I don't
10 disagree, that when you look at that language, you can
11 interpret it that it means that what the plaintiff meant there
12 was the door was open, but also there's nothing that states
13 that the door was not, was not locked, because what my client
14 told me was that this individual tried to run in there, but
15 the door was -- he was unable to open it.  So, the individual
16 basically leaned against the closet pretending that he was
17 hiding himself.
18    Unfortunately, when I was drafting the complaint, I
19 did not make that very clear and that's one of the reasons,
20 that's one of the things that we actually sought to amend in
21 the complaint, but that language aside, there's no basis for
22 the motion to dismiss, even the present complaint, taking that
23 language out, out of there.  To the extent counsel kept saying
24 that the complaint considered that the door was open, the door
25 was unlocked, nothing in that language indicates that a closet

1   door was open.  It was my mistake for not making it clear.
2         Taking that aside, nothing in the present complaint
3   gives the defendants any reason to bring the motion to
4   dismiss.  Counsel has not said anything in his motion papers,
5   he has not said anything here today in support of his motion
6   to dismiss.
7         MR. STEIN:  With all due respect, Your Honor,
8   referring the Court to the amended complaint -- well, let me
9   start over.  There is absolutely no ambiguity to the fact that
10  the closet door was either open or unlocked.
11        Further, Your Honor, to page 69 of the complaint,
12  just to put it in context, Upon opening the door, the
13  plaintiff --
14        THE COURT:  Which, the first complaint?
15        MR. STEIN:  The first complaint.
16        Upon opening the door, the plaintiff was met by an
17  individual who the plaintiff now believes to be a confidential
18  informant.  The reason that's important, Your Honor, is
19  because going back to paragraph 77 with the closet, pretending
20  to hide in the closet and as Your Honor said, you can't
21  pretend to hide in the closet.  It is not ambiguous.  The only
22  meaning of that paragraph is that the confidential informant
23  was pretending to hide because he did not want the plaintiff
24  to know that he was a confidential informant.
25        It's just abundantly clear, you can't pretend to

1  hide in a closet.  It doesn't make sense.  The only --
2           MR. UZOH:  Your Honor --
3           MR. STEIN:  Excuse me.
4           The only reading of that sentence, of that paragraph
5  is that the confidential informant pretended to hide because
6  he didn't want to give up his identity and that the closet
7  door was opened or unlocked.  It's the only way it can be
8  read.  There's no ambiguity there.
9           MR. UZOH:  If someone ran into a closet --
10          THE COURT:  We are talking about dismissing on the
11 face of the complaint.  Where does it state that there were
12 guns in the closet?
13          MR. STEIN:  Defendants asked the Court to take
14 judicial notice of the fact that there were guns in the
15 closet.
16          THE COURT:  Judicial notice of the truth of the fact
17 there were guns in the closet, how could it do that?
18          MR. STEIN:  Your Honor, the criminal court complaint
19 is a business record.  It is admissible and it was relied upon
20 to draft the complaint.  The Court can take notice of that.
21          MR. UZOH:  Your Honor, if I may --
22          MR. STEIN:  There's also -- Your Honor, there is
23 nothing that the defendant or that the plaintiff can do to
24 dispute that fact.  It's indisputable.
25          MR. UZOH:  There's nothing in the complaint that

1  says that the plaintiff had the --
2          THE COURT:  I don't think that you are appropriately
3  using or the documents were appropriately suggesting that the
4  plaintiff relied on these documents, therefore, I can accept
5  the truth of something in the documents.
6          On the face of this, you may very well be entitled
7  to summary judgment and if you move for summary judgment, put
8  in some additional facts, maybe you are entitled to, but you
9  are not entitled to dismiss the complaint so I am going to
10 deny the motion to dismiss the complaint.
11         MR. STEIN:  Your Honor, if I may, the criminal court
12 complaint which is attached to defendant's motion --
13         THE COURT:  How do I accept the truth of what is in
14 there, in the criminal court complaint?
15         MR. STEIN:  It's not hearsay.  It's a sworn
16 affidavit.  It's not hearsay.  And not only that, it is, it
17 can't be disputed by the plaintiff.  The Court has the
18 authority to convert this into a summary judgment motion based
19 on the fact that --
20         THE COURT:  All right.  I will convert it into a
21 summary motion judgment and you can do some discovery before
22 having to answer it.  Okay?
23         MR. UZOH:  Thank you.
24         MR. STEIN:  Thank you.
25         THE COURT:  I will grant the second amended

20

1  complaint, but I am not going to accept the allegation in that
2  complaint that the door was locked because that directly
3  contradicts the other allegation.
4          MR. STEIN:  Sorry, Your Honor, if I may, how can the
5  second amended complaint be accepted?
6          THE COURT:  Without that provision in it.  There are
7  other parts of the second amended complaint that further
8  elaborate on what happened here.  That allegation is not
9  accepted in the amended complaint.
10         MR. STEIN:  So then is the allegation in the first
11 amended complaint --
12         THE COURT:  Yes.
13         MR. STEIN:  -- substituted for it?
14         THE COURT:  Yes.
15         MR. UZOH:  Thank you, Your Honor.
16         (Matter concluded.)
17
18
19                  *     *     *     *     *
20
21 I certify that the foregoing is a correct transcript from the
   record of proceedings in the above-entitled matter.
22
23     /s/ Charleane M. Heading              July 12, 2017
   _____       _____
24     CHARLEANE M. HEADING                      DATE
25